IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TAHSHA K. DOYLE, )
         Plaintiff, )
vs. )
          ) Case No.    CIV-10-795-STE
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
         Defendant. )

# **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). Pursuant to 28 U.S.C. §636(c), the parties have consented to the exercise of jurisdiction over this matter by the undersigned Magistrate Judge. The Commissioner has answered and filed the administrative record ("TR"), and both parties have briefed their respective positions. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the final decision of the Commissioner.

## PROCEDURAL HISTORY

Plaintiff filed her application for SSI on August 17, 2007 (TR. 82-84). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 41, 42). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on June 16, 2009 (TR. 20-40). At the hearing, Plaintiff amended her alleged onset date of disability to August 17, 2007 (TR. 10). The Plaintiff appeared in person and with her non-attorney representative and offered her testimony in support of the application (TR. 23-36). A vocational expert (VE) also testified at the request of the ALJ (TR. 37-38). The ALJ issued his decision on July 20, 2009 finding that Plaintiff

was not entitled to SSI (TR. 10-19). The Appeals Council denied the Plaintiff's request for review on May 22, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1-3).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 12). At step two, the ALJ concluded that Plaintiff had the following severe impairment: "mild mental retardation" (TR. 12). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 12). At step four, the ALJ found that Plaintiff had

no past relevant work (PRW) thus the ALJ moved to step five of the sequential evaluation process (TR. 17).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff had the RFC to perform other jobs which existed in significant numbers in both the national and regional economies (TR. 17). By considering the testimony of the VE, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to SSI (TR. 18).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by not finding that Plaintiff met Listing 12.05C *Mental Retardation* (20 C.F.R. § 404.1520(c));[1] that the ALJ erred in his evaluation of the medical opinions of Dr. Pearce; and that the ALJ erred in his credibility analysis.

## ANALYSIS

### Step Three

In order to meet Listing 12.05C, a claimant must establish "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.* § 12.05C. When,

---

[1] 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied…
   C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

3

as here, "more than one IQ is customarily derived from [a] test[,] . . . the lowest of these [is used] in conjunction with 12.05." *Id.* § 12.00D.6.c.

In May 2003, Plaintiff, then age 14, was evaluated by Wendi L. Betz, Ph.D., a clinical psychologist, who found that Plaintiff's testing results indicated that her general level of intellectual ability fell in the borderline average range with a full scale IQ of 73, a verbal IQ of 74, and a performance IQ of 77 (TR. 184). Dr. Betz reported that some of Plaintiff's scores were "suggestive that anxiety interfered with her performance" (TR. 185). Dr. Betz also observed that Plaintiff was "experiencing severe levels of anxiety and depressive symptoms, as well as significant aggressive impulses that she seems unable to control" and that her "arousal level is quite elevated, with major difficulties in sleeping, impulse control and hyper vigilance." (TR. 186). Dr. Betz concluded that Plaintiff "appears to meet the criteria for Bipolar Disorder" (TR. 187). In October 2004, Dr. Betz referred Plaintiff to another physician for medication management for bipolar disorder (TR. 182).

In October 2007, Plaintiff, then age 19, was evaluated by Robert S. Schlottmann, Ph.D., a clinical psychologist (TR. 393-395). The evaluation included administration of the Wechsler Adult Intelligence Scale (WAIS-III), on which Plaintiff received a verbal IQ score of 65, a performance IQ score of 64, and a full scale IQ score of 62 (TR. 394). Dr. Schlottmann observed that following the testing, Plaintiff was "able to answer questions she previously missed, but that her performance was still rather poor" (TR. 393). He further observed that on one of the tasks on the test "she was not very observant and overlooked minor details, resulting in a lower score than she seemed capable of getting"; and that on the arithmetic portion of the test, "several of her answers were very close to the correct answer and it appeared that she responded quickly before checking her answer closely" (TR. 393). Dr. Schlottmann concluded that Plaintiff was functioning in the "mild mentally retarded range of intelligence"; and that she "seemed unsure of herself and at times may have failed to respond when she knew the answer"

4

(TR. 394). As to the validity of the intelligence testing, Dr. Schlottmann reasoned that "Although it appeared that she may be able to do slightly better than her scores indicate [sic], the improvement would likely be very minor" (TR. 394).

In November 2007, non-examining agency physicians completed a Mental RFC form in which they found that Plaintiff was "Markedly Limited" in her ability to understand, remember and carry out detailed instructions; and in her ability to interact appropriately with the general public (TR. 233-234). The agency physicians further concluded that Plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (TR. 235). Agency physicians also completed a Psychiatric Review Technique form (PRT) in which they evaluated Plaintiff based on Listing 12.05 *Mental Retardation* (TR. 219-232). They concluded that Plaintiff's degree of limitation was "Moderate" in the areas of restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and that Plaintiff has had "One or Two" episodes of decompensation, each of extended duration (TR. 229). Agency physicians offered the following explanation for the differences between the 2003 and the 2007 IQ tests:

> The examining doctor on the 2007 exam indicated that she did not put forth full effort. Most often, when individuals are assessed with the children's version of the Wechsler scales and subsequently evaluated with the adult version, the scores tend to be modestly higher than those obtained previously on the children's version. Also, her achievement scores at the age of 15 were consistent with the intelligence test scores obtained on the Wechsler Intelligence Scale for Children-III. There are no known intervening events or circumstances that might satisfactorily reconcile the discrepancies between the scores she obtained on the two tests

(TR. 239).

In his decision, the ALJ found that Plaintiff failed to meet the criteria of Listing 12.05C because the "claimant does not have a valid verbal, performance, or full scale IQ of 60 through

5

70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (TR. 14). In rejecting the 2007 IQ scores, the ALJ considered that the "consultative psychologist found the claimant did not put forth her full effort"; and adopted the reasoning of the agency physicians who found fault with the 2007 IQ scores because "most often" the scores "tend" to be "modestly higher" for individual taking the child's version of the WAIS-III and then the adult version (TR. 15, 16). The ALJ also adopted the opinion of the agency physicians who concluded that there was "no known intervening events or circumstances" that could reconcile the differences in the test scores (TR. 16-17).

Plaintiff first takes issue with the ALJ's rejection of the 2007 IQ score as invalid (See Plaintiff's Brief at pages 14-16). She argues that the ALJ ignores the findings of Dr. Schlottmann and the agency physicians that Plaintiff had a diagnosis of "mild mental retardation." Although Plaintiff appears to satisfy the capsule definition of Listing 12.05, this in no way assists her in meeting the two-prong test prescribed by 12.05C. The first prong of the test requires a valid verbal, performance, or full scale IQ of 60 through 70. The ALJ was presented with one set of scores in 2003 which failed to meet this requirement; and a set of 2007 scores which meet the requirement. The physician who administered the 2007 test appeared to question the degree of accuracy of the test but this fails to rise to the level of challenging the validity of the test (TR. 393-394). In his decision the ALJ overstates and exaggerates Dr. Schlottmann's opinion regarding the validity of the test by stating that "Ultimately, the consultative psychologist found the claimant did not put forth her full effort upon examination" (TR. 15). What Dr. Schlottmann did conclude was that "Although it appeared that she may be able to do slightly better than her scores indicate [sic], the improvement would likely be very minor" (TR. 394). The ALJ bolsters his rejection of the 2007 IQ test by accepting without explanation the inconclusive equivocation offered by agency physicians who opined that adult WAIS-III scores "tend" to be "modestly" higher than children's WAIS-III scores (TR. 16). Both the agency physicians and Dr.

6

Schlottmann concluded that Plaintiff had a diagnosis of "mild mental retardation" and the ALJ does not discuss other evidence which would call the validity of the 2007 test into question (TR. 219, 394, 15-17). No physician specifically commented on whether the 2007 was valid, thus, the ALJ, improperly substituted his opinion for that of a medical professional. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993).

Absent, other evidence which impeaches the credibility of the 2007 test, the ALJ's decision to reject the 2007 test was not supported by substantial evidence. See *Lax v. Astrue*, 489 F.3d. 1080 (10th Cir. 2007); See also *Flores v. Astrue*, 285 Fed. Apprx. 566 (10th Cir. 2008); 2008 U.S. App. LEXIS 16264.

The second prong of Listing 12.05C requires that a claimant have a physical or other mental impairment imposing an additional and significant work-related limitation of function. The limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). At step two, the ALJ is to determine whether the claimant has an "impairment or combination of impairments which significantly limits [his] . . . ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two requires a "de minimis" showing of impairment. See *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). However, the claimant must show more than the mere presence of a condition or ailment. See *Bowen v. Yuckert*, 482 U.S. 137, 153, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987)(step two is designed to identify "at an early stage" claimants with such slight impairments they would be unlikely to be found disabled even if age, education, and experience were not considered). A decision regarding whether a claimant has a 12.05C "significant limitation" should "closely parallel" the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two. *Hinkle* at 1353.

7

Plaintiff argues that Plaintiff had a severe mental impairment, apart from her mild mental retardation, which qualified as a significant limitation which satisfied the second prong of 12.05C (See Plaintiff's brief at pages 16-17). As to Plaintiff's mental impairment the ALJ correctly observed that she had

> The remote history of a possible bipolar disorder and inpatient treatment for her problems; however, the claimant has not required treatment for the same during the period of adjudication. The claimant also has the past history of drug and alcohol abuse; but, there is no current evidence of the same...There is no evidence the claimant is currently being prescribed any psychotropic medication or that any has been recommended

(TR. 15). The medical record indicates that throughout 2007, Plaintiff was fully oriented, that she had a normal mood and affect; and that there were no psychiatric problems that caused significant work-related limitation of function (TR. 364, 368, 371, 385, 388). Plaintiff also argues that the ALJ's determination at step five that she had moderate limitations in social functioning and relating to the general public and to a lesser extent coworkers and supervisors, somehow conflicts with the ALJ's determination at step three (See Plaintiff's Brief at page 16). In taking this prophylactic measure, the ALJ was merely meeting his obligation under S.S.R. 96-8p to formulate an RFC with due consideration to all of Plaintiff's impairments, including those that are not severe. The ALJ's step five finding is easily reconciled with his finding at step three. See *Timmons v. Astrue*, 360 Fed. Apprx. 984, 2010 U.S. App. LEXIS 840.

Thus, because Plaintiff failed to satisfy the second prong of 12.05C by establishing a physical or other mental impairment imposing an additional and significant work-related limitation of function, the ALJ's step three finding is supported by substantial evidence.

**The Medical Opinions of Dr. Pearce**

Plaintiff urges that the ALJ erred in his evaluation of the opinions of the non-examining agency physician, Burnard Pearce, Ph.D. (See Plaintiff's Brief at pages 18-22). Specifically, she claims that the ALJ failed to "note" his PRT and "several important opinions" expressed therein,

8

including Dr. Pearce's opinion that Plaintiff suffered from mild mental retardation, as well as moderate restrictions in her activities of daily living and one or two extended episodes of decompensation (TR. 223, 229). On the contrary, the ALJ's decision clearly adopts the opinion of Dr. Pearce that Plaintiff suffers from mild mental retardation (TR. 12). The ALJ further adopted Dr. Pearce's PRT conclusions as restated in the Dr. Pearce's mental RFC form (TR. 13, 229, 223-224). The ALJ also included Dr. Pearce's conclusions in Plaintiff's RFC (TR. 17). Plaintiff argues that Dr. Pearce's opinions somehow bolster her argument that she satisfied the second prong of 12.05C. However, as previously discussed herein, even when considering the opinions of Dr. Pearce, Plaintiff failed to establish a severe mental impairment, apart from her mild mental retardation, which qualified as a significant limitation.

Thus, it appears that the ALJ properly evaluated the opinions of Dr. Pearce.

**<u>Credibility Determination</u>**

Plaintiff also argues that the ALJ erred in his assessment of Plaintiff's credibility (See Plaintiff's Brief at pages 22-27). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

9

*Id.* at 164. In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the credibility of the Plaintiff followed the dictates of *Kepler* by providing an adequate discussion of the evidence which linked specific evidence to his findings (TR. 14-17). In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff.

An ALJ's determination of credibility is given great deference by the reviewing court. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and

not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Thus, it appears from the record that the ALJ's credibility determination was supported by substantial evidence and should not be disturbed on appeal.

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the final decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**.

ENTERED this the 1st day of August 2011.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE